UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROL KLISKEY )<br>)<br>      Plaintiff )<br>)<br>vs. )<br>)<br>MAKING OPPORTUNITY COUNT, INC. )<br>)<br>)<br>      Defendant ) | C.A. NO.: |

## COMPLAINT AND JURY DEMAND

1. The Plaintiff, Carol Kliskey, is a 60-year-old female who resides in Gardner, Massachusetts.

2. The Defendant, Making Opportunity Count, Inc. ("MOC") is a Massachusetts corporation with a principal place of business located at 29 Nursery Lane, 2nd Floor, Fitchburg, Massachusetts 01420.

### JURISDICTION

3. This Court has jurisdiction pursuant to 28 U.S.C. §1331 wherein the Plaintiff seeks to vindicate and protect rights under causes arising under Federal Law.

4. The Defendants have sufficient contacts to Massachusetts and/or this District such that this Court may assert Personal Jurisdiction over the Defendants.

5. Venue is proper in this District where Plaintiff resides therein and the acts and/or omissions complained of occurred in this District pursuant to 28 U.S.C. §1391.

### FACTS

6. Prior to her termination of April 2022, Plaintiff worked as a Program Assistant for MOC for more than 17 years. At the time of her termination, Plaintiff's pay was $19.82 per hour.

7. Plaintiff's primary role at MOC was to assist clients in applying for WIC benefits.

8. Plaintiff's daughter ("PD") lives in Oklahoma. PD has three children under the age of nine. The oldest of those three children has a terminal medical condition. The children reside with their father.

9. On March 18, 2022, PD suffered a psychiatric medical emergency that required her to be hospitalized.

10. That same evening, Plaintiff notified her Supervisor, Assistant Director, Clarissa Soto, of her daughter's condition and that she would be traveling to Oklahoma to care for her.

11. On March 19, 2022, Plaintiff flew to Oklahoma. There she learned that her daughter had attempted suicide and would be placed inpatient psychiatric care. Consequently, Plaintiff notified Clarissa Soto that she needed to take FMLA leave to care for PD.

12. When she went to apply for FMLA, Plaintiff had a hard time downloading the required paperwork. She communicated this to Soto. The latter acknowledged Plaintiff's intent to use FMLA leave. Soto then sent photographs of the required documents to the Plaintiff.

13. Plaintiff printed those forms and had her daughter's doctor's fill them out. Plaintiff remained in constant communication with Soto until the FMLA forms were submitted.

14. While the FMLA forms were being completed, Plaintiff worked remotely for three days and otherwise utilized sick leave.

15. On March 31, 2022, Plaintiff emailed the completed FMLA paperwork to MOC. Immediately after sending the paperwork, Plaintiff sent a text message to Kylee Tidmann, who worked in Human Resources at MOC. Tidmann replied in a text message to Plaintiff that the paperwork was received.

16. Soto confirmed that that her FMLA leave was approved. Plaintiff was further advised by MOC payroll that Plaintiff did not have responsibilities relating to the completion of her

      timecard while on leave, and that it would be completed for her. Ms. Soto also told Plaintiff that she was no longer allowed to work remotely.

17. On April 8, 2022, Plaintiff received her regular pay between March 20, 2022 and April 2, 2022. This consisted of 57.5 hours of sick leave, as expected, and regular deductions.

18. Plaintiff communicated regularly with Kylee Tidmann and Ms. Soto. Due to the severity of her daughter's condition, Plaintiff communicated that she sought twelve weeks of FMLA with a goal to ultimately return on July 1, 2022.

19. On May 11, 2022, Plaintiff checked her leave balance and took a screenshot of the accrued balance of vacation time to date, which read 117.65 hours.

20. In June of 2022, Plaintiff noticed that she had not been paid since mid-April. Upon reviewing her paystub generated on April 22, 2022, Plaintiff saw that FMLA was credited for 80 hours during the pay period spanning between April 3, 2022, and April 16, 2022, but her sick time was not used. Plaintiff's regular deductions were not taken and she received a check for $0.00.

21. Plaintiff spoke with Tidmann who stated that Plaintiff's timesheets were being filled out incorrectly by Soto.

22. Shortly after speaking with Ms. Tidmann, Plaintiff could not access her MOC email account. Despite this, Plaintiff periodically worked for MOC. This included taking phone calls from clients and routing requests to her coworkers. She was not paid for this work.

23. Despite alerting her supervisors to the issues with her timecard, and not being paid, Plaintiff never received a normal paycheck again from MOC.

24. On June 17, 2022, Plaintiff returned to Massachusetts to retrieve her automobile.

25. While in Massachusetts, she spoke with Soto in person. During that conversation, Plaintiff expressed a desire to stay with her daughter past July 1. Ms. Soto told Plaintiff that she needed to either resign from her employment or be terminated on July 1. Ms. Soto stated that, if the Plaintiff were to be terminated, MOC would never hire her back.

26. On June 27, 2022, MOC terminated the Plaintiff's employment while she on protected leave pursuant to the FMLA. On that date, MOC cancelled Plaintiff's health, dental, and vision insurance after not paying her for six consecutive pay periods.

27. On June 30, 2022, at the direction of Ms. Soto and fearing for her future employment opportunities, Plaintiff submitted her resignation to MOC.

28. Plaintiff has satisfied all administrative and other pre-requisites for bringing suit.

COUNT I
VIOLATION OF WAGE ACT

29. The Plaintiff repeats and re-alleges the above paragraphs as if each were set forth here in its entirety.

30. By the conduct alleged above, the Defendants have violated G.L. c. 149, §148 for failing to pay Plaintiff wages and/or failing to pay the Plaintiff's wages, vested sick time and/or sick time when due.

31. As a direct and proximate result, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of personal and professional reputation, emotional distress, and mental suffering.

COUNT II
WAGE ACT RETALIATION

32. The Plaintiff repeats and re-alleges the above paragraphs as if each were set forth here in its entirety.

33. The Plaintiff engaged in protected conduct when she complained about the Defendant's wage act violations and/or further exercised protected rights under the Wage Act;

34. The Plaintiff thereafter suffered an adverse employment action including – but not limited to – termination.

35. A causal connection exists between that protected activity and her termination.

36. As a direct and proximate result, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of personal and professional reputation, emotional distress, and mental suffering.

## COUNT III
## FAILURE TO PAY EARNED SICK TIME

37. The Plaintiff repeats and re-alleges the above paragraphs as if each were set forth here in its entirety.

38. Additionally, and/or alternatively, the Plaintiff asserts that pursuant to G.L. c. 149, §148C: (1) Plaintiff had accrued earned sick time within the meaning of the law; (2) Defendant did not allow Plaintiff to utilize his accrued earned sick time and otherwise refused to pay as required by G.L. c. 149, § 148C.

39. As a direct and proximate result, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of personal and professional reputation, emotional distress, and mental suffering.

## COUNT IV
## EARNED SICK TIME INTERFERENCE/RETALIATION

40. The Plaintiff repeats and re-alleges the above paragraphs as if each were set forth here in its entirety.

41. Additionally, and/or alternatively, the Plaintiff asserts that pursuant to G.L. c. 149, §§ 148C(h),148C(i), 150: (1) Plaintiff engaged in protected conduct when she requested to and/or sought to take sick time under Massachusetts earned sick time laws; (2) Defendant interfered with, restrained or denied the Plaintiff from exercising or attempting to exercise a right or earned sick time under G.L. c. 149, §§ 148C; (3) Defendants thereafter took adverse employment action against the Plaintiff and/or otherwise retaliated against or acted to restrain or deny the Plaintiff from taking earned sick time; and (4) A causal connection existed between that protected activity and Plaintiff's termination.

42. As a direct and proximate result, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of personal and professional reputation, emotional distress, and mental suffering.

## COUNT V – RETALIATION IN VIOLATION OF PAID FAMILY MEDICAL LEAVE

43. The Plaintiff repeats and re-alleges the above paragraphs as if each were set forth here in its entirety.

44. The Plaintiff provided a benefit claim consistent with G.L. c. 175M, §5(2).

45. The Plaintiff thereafter suffered an adverse employment action.

46. A causal connection exists between that protected activity and the adverse action taken by the Defendants against the Plaintiff.

47. The Defendants presumptively retaliated against the Plaintiff in violation G.L. c. 175M, §9.

48. As a direct and proximate result of the Defendants' retaliatory acts, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss

of employment benefits, loss of personal and professional reputation, emotional distress, and mental suffering.

## COUNT V – VIOLATION OF THE FAMILY MEDICAL AND LEAVE ACT

49. The Plaintiff repeats and re-alleges the above paragraphs as if each were set forth herein.

50. At all times relevant to this Complaint, the Defendant was an employer, and the Plaintiff was an employee within the meaning of 29 U.S.C. § 2611.

51. By the conduct alleged herein, Defendant took adverse action against the Plaintiff during her period of protected leave secured under the FMLA and/or took adverse action against the Plaintiff in retaliation for Plaintiff's exercise of her FMLA rights.

52. Such conduct was in violation of 29 U.S.C. §2615.

53. As a direct and proximate result of the Defendant's unlawful termination, the Plaintiff has suffered and continues to suffer damages, including but not limited to loss of income, loss of employment benefits, loss of personal and professional reputation, emotional distress, and mental suffering.

## REQUEST FOR RELIEF

**WHEREFORE**, the Plaintiff prays that this Honorable Court grant the following relief:

I. Judgment against the Defendant;

II. Damages, including compensatory (including double and/or trebled damages), emotional distress, punitive, and/or liquidated, to the Plaintiff, as authorized or mandated by applicable law, in an amount to be determined at trial;

III. Compensation for the Plaintiff of lost wages, benefits and other remuneration with interest thereon.

IV. Costs and any reasonable attorney's fees;

V. Pre-judgment and post-judgment interest;

VI. Appropriate injunctive, declaratory and other equitable relief; and

VII. Such other relief as this Honorable Court may deem just and appropriate under the circumstances.

## JURY DEMAND

The Plaintiff demands a jury trial on all claims herein.

Dated: October 26, 2022

Respectfully submitted,
The Plaintiff,
By her attorneys,

/s/ Jamie Goodwin
/s/ Samuel Kennedy-Smith
Jamie Goodwin (BBO# 673207)
Samuel Kennedy-Smith (BBO# 685647)
Duddy Goodwin & Pollard
446 Main Street,
Boston, MA 02109
jg@dgpfirm.com
sks@dgpfirm.com

8